IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICTOR QUINTANA,

    Plaintiff,

vs.                                                                No. CIV 17-0701 JB/JHR

ANDREW C. YOST;
AMERICAN ALTERNATIVE
INSURANCE
CORPORATION; DOES 1-5
and ENTITIES,
CORPORATIONS, and
PARTNERSHIPS 1-5,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on the Plaintiff's Motion to Remand, filed September 28, 2017 (Doc. 18)("Motion"). The Court held a hearing on June 7, 2018. The primary issue is whether 28 U.S.C. § 1332(a)'s amount-in-controversy requirement is met when it exceeds $75,000.00 at the time of removal, but dips below $75,000.00 after removal, because the parties stipulated to Defendant American Alternative Insurance Corporation's dismissal, and because the sole insurance policy at issue now is limited to $50,000.00. The Court concludes that it must calculate the amount in controversy at the time of removal. Accordingly, the insurance policy's $50,000.00 limit does not extinguish the Court's jurisdiction. The Court therefore denies the Motion. Although the Court concludes that the amount-in-controversy requirement is met, there is insufficient evidence to conclude that the parties are diverse. Accordingly, the Court orders Defendant Andrew C. Yost to show cause within ten calendar days why the Court should not remand the case.

## FACTUAL BACKGROUND

The Court takes the facts from Plaintiff Victor Quintana's Complaint for Personal Injuries and Damages, D-101-CV-2017-00158, filed January 18, 2017 (First Judicial District, County of Santa Fe, State of New Mexico), filed in federal court July 5, 2017 (Doc. 1-1)("Complaint") and from Defendant American Alternative Insurance Corporation's Notice of Removal, filed July 5, 2017 (Doc. 1)("Notice of Removal"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that the facts are largely Quintana's version of events.

On March 4, 2014, Yost crashed a 1999 Volkswagen into the rear end of the 2008 Dodge that Quintana was driving. See Complaint ¶¶ 10-11, at 3. As a result of the crash, Quintana was injured, and the Dodge "sustained heavy and disabling damage." Complaint ¶ 15, at 4. See id. ¶ 14, at 3. Armano Beltran d/b/a Santa Fe Tow owns the Dodge, but Quintana was lawfully operating it when Yost crashed into the car. See Complaint ¶ 10, at 3. American Alternative insures the Dodge. See Complaint ¶ 10, at 3.

Quintana lives in Santa Fe, New Mexico. See Complaint ¶ 1, at 1. Yost "has lived in Minnesota for over two years" and intends to remain there. Notice of Removal ¶ 17, at 4. See Notice of Removal ¶ 16, at 4. American Alternative is domiciled in Delaware. See Notice of Removal ¶ 19, at 4. Its principle place of business "is not in New Mexico." Notice of Removal ¶ 19, at 4.

## PROCEDURAL BACKGROUND

Quintana sues Yost asserting negligence and negligence per se. See Complaint ¶¶ 12-28, at 3-5. According to Quintana, he suffered damages in the form of "severe and permanent physical injuries, past and future medical expenses, loss of life's enjoyment, loss of household

services, past and future lost wages, lost earning capacity, past and future emotional and physical pain and suffering." Complaint ¶ 28, at 5. Quintana also sues American Alternative for underinsured motorist benefits contending that the injuries Yost caused exceed Yost's insurance policy's bodily injury liability coverage. See Complaint ¶¶ 37-42, at 7-8. Finally, Quintana alleges that Yost's conduct warrants punitive damages. See Complaint ¶¶ 29-36, at 6-7. Thus, Quintana seeks compensatory and punitive damages, attorney's fees, all pre- and post-judgment interest, and any other relief the Court deems proper. See Complaint at 8.

American Alternative removes under 28 U.S.C. § 1441 and asserts that the Court has original jurisdiction under 28 U.S.C. § 1332(a). See Notice of Removal at 1. It contends that there is complete diversity, because Quintana is a New Mexico resident, whereas Yost and American Alternative are not. See Notice of Removal ¶¶ 14-19, 21, at 3-5. It asserts that the amount in controversy exceeds $75,000.00, because Quintana "denies that he is seeking damages less than $75,000.00 against both Yost and American Alternative," and because Quintana seeks punitive damages. Notice of Removal ¶ 23, at 5 (citing Requests for Admission Nos. 4-5, at 3-4, filed July 5, 2017 (Doc. 1-2)("Requests for Admission")). See Notice of Removal ¶ 26, at 6. After American Alternative filed its Notice of Removal, the parties stipulated to American Alternative's dismissal without prejudice. See Amended Stipulation of Dismissal of Defendant American Alternative Insurance Corporation at 1, filed September 19, 2017 (Doc. 15)("Stipulation").

   1.     **The Motion.**

Quintana moves to remand to state court. See Motion at 1. He contends that Yost's vehicle insurance coverage for bodily injury is limited to $50,000.00. See Motion ¶ 4, at 1. Yost argues, accordingly, that, because he does not seek to recover from Yost personally, and because

American Alternative is no longer a defendant, the amount in controversy is necessarily less than $75,000.00.  See Motion ¶¶ 9-11, at 2.

    **2.    The Response.**

Yost responds.  See Response to Motion For Remand, filed October 12, 2017 (Doc. 22)("Response").  He contends that the Court may still exercise subject-matter jurisdiction, because Quintana refused to stipulate, at the time of removal, that he sought less than $75,000.00.  See Response at 2-3.  Yost also asserts that, on the basis of the pre-litigation settlement demand, the amount in controversy at the time of removal is at least $90,000.00, because: (i) Quintana's medical expenses equal $15,466.38; (ii) the Court has reasoned, in another case, that personal injury cases customarily settle for three times the medical expenses; and (iii) punitive damages are often calculated to equal the settlement amount.  See Response at 5 (citing Aranda v. Foamex Int'l, 884 F. Supp. 2d 1186, 1207 (D.N.M. 2012)(Browning, J.)).  He argues that Quintana's willingness to now stipulate to a $50,000.00 cap is irrelevant, because the amount in controversy is determined at the time of removal.  See Response at 3 (citing Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1488 (10th Cir. 1991)); Response at 4 ("Once jurisdiction attaches, 'events subsequently defeating it by reducing the amount in controversy are unavailing.'")(quoting Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1340 (10th Cir. 1998)).  Yost requests, accordingly, that the Court deny the Motion.  See Response at 6.

    **3.    The Reply.**

Quintana replies.  See Plaintiff's Reply in Support of Motion to Remand at 1, filed October 23, 2017 (Doc. 23)("Reply").  Quintana argues that it is "legally certain" that he cannot recover more than $75,000.00, because of the $50,000.00 policy limit.  Reply at 1 (citing

McPhail v. Deere & Co., 529 F.3d 947, 955 (10th Cir. 2008)). He concludes, accordingly, that the Court must remand for lack of subject-matter jurisdiction. See Reply at 2.

**4.      The Hearing.**

The Court held a hearing. See Draft Transcript of Motion Proceedings at 1:4 (taken June 7, 2018)(Court)("Tr.").[1] The Court began by asking whether Quintana would concede that, at the time of removal, the Court had jurisdiction. See Tr. at 4:6-8 (Court). Quintana conceded that point. See Tr. at 4:9 (Solon)("Yes, your Honor, we would concede that."). Quintana argued that the difference after removal is that American Alternative is no longer a party, so recovery "is capped at $50,000." Tr. at 5:3-9 (Solon). Quintana noted that he had not filed a stipulation capping recovery, but stated that he was willing to agree to such a stipulation if it would get him back into state court. See Tr. at 5:19-22 (Solon); id. at 6:4-13 (Solon).

Yost argued that Quintana's stipulation to limit damages now is irrelevant, because the relevant question is whether the Court had jurisdiction at the time of removal. See Tr. at 7:23-8:1 (Jones); id. at 8:18-25 (Jones); id. at 9:14-10:10 (Jones)("You've got to make that stipulation before removal, because anything you do afterwards . . . does not divest the Court of jurisdiction."). Yost asserted that American Alternative's stipulated dismissal does not change the analysis, because, to calculate the amount in controversy, the Court cannot aggregate claim amounts. See Tr. at 12:6-8 (Jones). Yost argued, however, that he has always met the amount-in-controversy requirement, because: (i) Quintana refused to admit before removal that he would not seek more than $75,000.00 against Yost; and, (ii) using Quintana's medical bills and a

---

[1]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version. If a final transcript is made, it may contain slightly different page and/or line numbers.

calculation which the Court has used previously, the amount in controversy is at least $90,000.00. See Tr. at 12:9-16 (Jones); id. at 13:17-14:4 (Jones).

Quintana conceded that, once the Court has jurisdiction, the Court does not lose jurisdiction based on a plaintiff's stipulation capping recovery. See Tr. at 17:25-18:8 (Court, Solon). He also conceded that, based on his medical bills, the possibility of pain and suffering, and punitive damages "it's conceivable that we could have recovered in excess of $75,000." Tr. at 18:22-25 (Solon). Finally he admitted that, "at the time this case was filed, it would be difficult for the Court to find that there is a legal certainty that this case was [valued] less than $75,000." Tr. at 19:5-10 (Court, Solon). The parties ended by asking the Court to give them thirty days to possibly work out an agreement, eliminating the need for the Court to rule on the Motion. See Tr. at 19:12-16 (Solon); id. at 20:18-21 (Jones).[2]

## **LAW REGARDING REMOVAL**

"If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court 'embracing the place where such action is pending.'" Thompson v. Intel Corp., 2012 WL 3860748, at *4 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting 28 U.S.C. § 1441(a)). See Huffman v. Saul Holdings Ltd. P'ship., 194 F.3d 1072, 1076 (10th Cir. 1999)). Defendants may remove a civil action to federal court where the district court would have original jurisdiction over the case based upon diversity of citizenship. See Huffman v. Saul Holdings Ltd. P'ship., 194 F.3d at 1076 (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). Nonetheless, federal courts "are to . . . narrowly [construe removal statutes] in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 404 F.3d 1090, 1095

---

[2]The parties indicated to the Court's courtroom deputy that they were unable to reach an agreement.

(10th Cir. 2005)(citing <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09 (1941). <u>See</u> <u>United States ex rel. King v. Hillcrest Health Ctr.</u>, 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal." <u>Fajen v. Found. Reserve Ins. Co.</u>, 683 F.2d 331, 333 (10th Cir. 1982). The defendant seeking to remove an action to federal court bears the burden of establishing the district court's subject-matter jurisdiction over the case. <u>See</u> <u>Montoya v. Chao</u>, 296 F.3d 952, 955 (10th Cir. 2002).

1. **The Presumption Against Removal.**

Federal courts are courts of limited jurisdiction; thus, there is some measure of a presumption against removal jurisdiction which the defendant seeking removal must overcome. <u>See</u> <u>Fajen v. Found. Reserve Ins. Co.</u>, 683 F.2d at 333; <u>Bonadeo v. Lujan</u>, 2009 WL 1324119, *4 (D.N.M. 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand."). The Supreme Court of the United States of America recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. <u>See</u> <u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>, 135 S. Ct. at 554. When contested, the defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence." <u>McPhail v. Deere & Co.</u>, 529 F.3d at 953. <u>See also</u> <u>Bonadeo v. Lujan</u>, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").

2. **Procedural Requirements for Removal.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." <u>Thompson v. Intel Corp.</u>, 2012 WL 3860748, at *5. A removal that does not comply

with the express statutory requirements is defective, and the case must be remanded to state court.  See Huffman v. Saul Holdings Ltd. P'ship, 194 F .3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  28 U.S.C. § 1446(a).  Such notice of removal is proper if filed within thirty-days from the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The United States Court of Appeals for the Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.

### 3.  **Amendment of the Notice of Removal.**

In Caterpillar, Inc. v. Lewis, the Supreme Court held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court.  See 519 U.S. at 70-78.  Similarly, citing Caterpillar, Inc. v. Lewis, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court." Browning v.

Am. Family Mut. Ins. Co., 196 F. App'x 496, 505-06 (10th Cir. 2010). In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit found on appeal defects in the notice of removal, including that the notice failed to properly allege diversity of citizenship. See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . ."). The Seventh Circuit permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction. See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal. See Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007)(unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts)[3]; Watkins v. Terminix Int'l Co., 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W.R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present."). The Tenth Circuit has further reasoned that disallowing amendments to

---

[3] Jenkins v. MTGLQ Investors is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Jenkins v. MTGLQ Investors, Browning v. Am. Family Mut. Ins. Co., and Watkins v. Terminix Int'l Co. have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

the notice of removal, even after the thirty-day removal window expired, when the defendant made simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968). The Tenth Circuit noted that a simple error in a jurisdictional allegation included failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship. See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301. In McEntire v. Kmart Corp., 2010 WL 553443 (D.N.M. 2010)(Browning, J.), when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- this Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements." 2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 300-02 (10th Cir. 1968)). Further, in Thompson v. Intel Corp., this Court permitted the defendant Intel Corp. to amend its notice of removal to include missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met. See 2012 WL 3860748, at *1.

There are limits to the defects which may be cured by an amended notice of removal, as Professors Wright and Miller have explained:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain

> jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3733, at 651-59 (4th ed. 2009)(footnotes omitted). Professor Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction." 16 James William Moore, Moore's Federal Practice, § 107.30[2][a][iv], at 107-184 (3d ed. 2012).

### 4. Consideration of Post-Removal Evidence.

As this Court has previously explained, the Tenth Circuit looks both to evidence in the complaint and to evidence submitted after the complaint, in determining whether the criteria necessary for removal are met. See Thompson v. Intel Corp., 2012 WL 3860748, at *8 (citing McPhail v. Deere & Co., 529 F.3d at 956). The Tenth Circuit explained in McPhail v. Deere & Co. that a district court may have evidence presented to a district court after a notice of removal has been filed, even if produced at a hearing on subject-matter jurisdiction, to determine if the jurisdictional requirements are met. See 529 F.3d at 593. "[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward." 529 F.3d at 593 (citing Meridian Secs. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006)(Easterbrook, J.), and Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)). As this Court has explained, "the Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that 'events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed.'" Aranda v. Foamex Int'l, 2012 WL 2923183, at *18 (D.N.M. 2012)(Browning, J.)(quoting Carroll v. Stryker Corp., 658 F.3d 675, 681 (7th

Cir. 2011)).⁷ Thus, when determining if the requirements for federal jurisdiction are met in a matter removed from state court, a district court may consider evidence submitted after removal.

---

⁷The Court has concluded that the language in McPhail v. Deere & Co., to some extent, conflicts with older Tenth Circuit decisions, but nevertheless defines the scope of evidence a district court may consider when determining its jurisdiction over a matter removed from state court:

> McPhail v. Deere & Co. appears to conflict with the Tenth Circuit's previous decisions in Laughlin v. Kmart Corp., and Martin v. Franklin Capital Corp.. In Laughlin v. Kmart Corp., the Tenth Circuit held that "Kmart's economic analysis of Laughlin's claims for damages prepared after the motion for removal and purporting to demonstrate the jurisdictional minimum does not establish the existence of jurisdiction at the time the motion was made." 50 F.3d at 873. In Martin v. Franklin Capital Corp., the Tenth Circuit held that the defendant's summary of the allegations and the requested relief "[did] not provide the requisite facts lacking in the complaint." 251 F.3d at 1291.

Aranda v. Foamex Int'l, 2012 WL 2923183, at * 15. The Court explained that, although there is some conflicting precedent within the Tenth Circuit on this matter, it is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists, in light of the Tenth Circuit's clarification of its precedents in McPhail v. Deere & Co. See Aranda v. Foamex Int'l, 2012 WL 2923183, at *11-12. Indeed, the Tenth Circuit admits that its "opinions have not been entirely clear on [this amount-in-controversy] issue," but held that its ruling in McPhail v. Deere & Co. is consistent with the Tenth Circuit's prior holdings and analysis. McPhail v. Deere & Co., 529 F.3d at 954-55. Describing its holding in Martin v. Franklin Capital Corp., in which the Tenth Circuit stated that a defendant must "establish the jurisdictional amount by a preponderance of the evidence," the Tenth Circuit said "it would have been more precise to say that the defendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that $75,000 was in play, which the defendants in Martin failed to do." McPhail v. Deere & Co., 529 F.3d at 955 (emphasis in original). With respect to Laughlin v. Kmart Corp., the Tenth Circuit clarified that it was "presented with a petition and a notice of removal that both only referred to damages in excess of $10,000." McPhail v. Deere & Co., 529 F.3d at 955. Furthermore, the notice of removal in Laughlin v. Kmart Corp. referred only to the removal statute and "thus no jurisdictional amounts are incorporated into the removal notice by reference to the statute." Laughlin v. Kmart Corp., 50 F.3d at 873. Accordingly, even though there appears to be some tension between these decisions, because the Tenth Circuit in McPhail v. Deere & Co. characterized its holding as consistent with its prior decisions and because McPhail v. Deere & Co. is the Tenth Circuit's most recent and most thorough discussion how to determine the amount in controversy, the Court will focus its analysis on that case. The Court thus concludes that the Tenth Circuit's approach in Laughlin v. Kmart is "one of the most restrictive approaches to removal," and the Tenth Circuit has clarified its stance to allow a court to consider post-removal evidence when determining if federal court jurisdictional requirements are met. Aranda v. Foamex Int'l, 2012 WL 2923183, at n.11.

See Thompson v. Intel Corp., 2012 WL 3860748, at *14 ("[I]t is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists.").

## LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'" Thompson v. Intel Corp., 2012 WL 3860748, at *12 (citing 28 U.S.C. § 1332(a)). As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *3 (D.N.M. 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & N.R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d at 951). The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d 1143, 1163 (D.N.M. 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956). The Court will discuss the two requirements in turn.

  **1. Diversity in Citizenship.**

For diversity jurisdiction purposes, a person's domicile determines citizenship. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 2013). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *3 (citing Crowley v. Glaze, 710 F.2d at 678). See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an

action is commenced such jurisdiction may not be divested by subsequent events."). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired."). A corporation on the other hand, is "'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)).

    **2.**     **Amount in Controversy.**

The statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold. Martinez v. Martinez, 2010 U.S. Dist. LEXIS 38109, at *18 (D.N.M. 2010)(Browning, J.). If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, 2010 U.S. Dist. LEXIS 38109, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating

Co. v Owens, 135 S. Ct. 547 (2014). Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated. See 14A Charles A. Wright et al., Federal Practice and Procedure, Jurisdiction § 3704, at 566-95 (4th ed. 2011). While the rules on aggregation sound complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1996).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953, 955 ("[T]he defendant must affirmatively establish jurisdiction by proving jurisdictional facts that ma[k]e it possible that $75,000 [i]s in play."). In the context of establishing an amount in controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955. The Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court. McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 [is] in play." 529 F.3d at 955.

The Supreme Court recently has stated that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. at 554. The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., LLP v. Owens, 135 S. Ct. at 554.

## **ANALYSIS**

Quintana contends that the Court must remand the case to state court, because the amount in controversy is capped at Yost's insurance liability coverage of 50,000.00. Because Quintana contests the amount in controversy, the Court must find, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold. See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. at 553-54 (citing 28 U.S.C. § 1446(c)(2)(B)). To meet that burden, a defendant may rely on an "estimate of the potential damages from the allegations in the complaint," a proposed settlement amount, or other summary-judgment-type documentation. McPhail v. Deere & Co., 529 F.3d at 955-56. Should the defendant meet his or her burden, the jurisdictional threshold is satisfied, unless it is "legally certain" that $75,000.00 or less is at stake. McPhail v. Deere & Co., 529 F.3d at 954. The relevant inquiry is the amount in controversy at the time of removal. See Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1488 (10th Cir. 1991)("[T]he propriety of removal is judged on the complaint as it stands at the time of the removal.")(citing Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939)); Sweich v. Fred Loya Insurance Co., 264 F. Supp. 3d 1113, 1132 (D.N.M. 2017)(Browning, J.)("The defendants need only affirmatively establish jurisdiction by proving jurisdictional facts that ma[k]e it

possible that $75,000 [is] in play at the time of removal."). See also Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 417 (9th Cir. 2018)("When we say that the amount in controversy is assessed at the time of removal, we mean that we consider damages that are claimed at the time the case is removed by the defendant."). Reflecting that rule, "[o]nce jurisdiction has attached, events subsequently defeating it by reducing the amount in controversy are unavailing." Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1340 (10th Cir. 1998)(citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)).

Quintana admitted at the hearing that the Court had jurisdiction at the time of removal. See Tr. at 18:22-25 (Solon); id. at 19:5-10 (Court, Solon). Because the amount in controversy is jurisdictional, however, the Court examines it despite Quintana's admission. Based on summary-judgment-like documentation submitted and estimations arising from the Complaint's allegations, the Court concludes that the amount in controversy exceeds $75,000.00. First, before removal, Quintana denied in the Requests for Admission that he sought less than $75,000.00 against Yost. See Requests for Admission No. 4, at 3; McPhail v. Deere & Co., 529 F.3d at 956-57 (stating that Plaintiff's representations that she seeks more than $75,000.00 is evidence "support[ing] diversity jurisdiction"). Second, a pre-litigation settlement demand shows that Quintana's medical damages equal $15,466.38. See Letter from Linda J. Rios to Viola Amador, State Farm Insurance at 2 (dated July 28, 2016), filed October 12, 2017 (Doc. 22)("Medical Letter"). As the Court has held previously, "[i]t is common in personal injury to settle on the basis of three times the medical expenses." Aranda v. Foamex Int'l, 884 F. Supp. 2d at 1207. Using that multiplier, a settlement figure for just compensatory damages would equal $46,399.14. Quintana's Complaint requests more than compensatory damages, however. See Complaint ¶¶ 29-36, at 6-7 (requesting punitive damages); id. at 8 (requesting

compensatory damages, attorneys' fees, and all pre- and post-judgment interest on all sums awarded). When a party seeks punitive damages, "applying a one-to-one ratio" is appropriate, Aranda v. Foamex Int'l, 884 F. Supp. 2d at 1207, which makes damages $92,798.28.[4] This figure comfortably exceeds the jurisdictional threshold even without counting attorneys' fees.

That Yost's insurance policy is limited to $50,000.00 does not change the analysis. It is established that "policy limits" do not legally "determine the amount in controversy" when the case involves "the applicability of an insurance policy to a particular occurrence." Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908, 911 (5th Cir. 2002). See, e.g., Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997)("Because the applicability of Budget's liability coverage to a particular occurrence is at issue, the amount in controversy is the value of the underlying potential tort action."); Pierre v. Government Employees Ins. Co., 2017 WL 2062012, at *2 (M.D. Fla. May 13, 2017)(Covington, J.); 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3710 (3d ed. 2009). Rather, the amount in controversy "is measured by the value of the underlying claim." Hartford Ins. Group v. Lou-Con, 293 F.3d at 911. Accordingly, the $50,000.00 policy limit does not affect the Court's conclusion.

Although not contested, the Court considers whether the parties are diverse. Yost has lived in Minnesota for two years "with the intent to make Minnesota his home." Notice of

---

[4]If American Alternative was still a party, the amount-in-controversy calculation against Yost would not change. When calculating the amount in controversy, the Court may not "aggregate independent claims against multiple defendants." Martinez v. Martinez, 2010 1608884, at *18 (D.N.M. Mar. 30, 2010)(Browning, J.)(citing Wright & Miller, Federal Practice and Procedure: Jurisdiction § 3704, at 146-50 (3d ed. 2009)). Quintana's claims against Yost and American Alternative are independent; Quintana sues Yost for negligence, negligence per se, and punitive damages, whereas Quintana sues American Alternative for underinsured motorist benefits. Accordingly, even if American Alternative were still a party, the Court would not aggregate the claims to determine the amount in controversy.

Removal ¶ 16, at 4.  See id. ¶ 17, at 4.  Accordingly, Yost is domiciled in Minnesota, so he is considered a Minnesota citizen for diversity purposes.  See Middleton v. Stephenson, 749 F.3d at 1200 (10th Cir. 2014).  Quintana, on the other hand, alleges that he is "a resident of Santa Fe, Santa Fe County, State of New Mexico."  Complaint ¶ 1, at 1.  See Notice of Removal ¶ 14, at 3.  Residency, however, does not establish domicile or citizenship for diversity purposes without additional evidence.  See Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233, 1238 (10th Cir. 2015)("An individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship.").  Although Quintana admitted that the Court had jurisdiction "at the time [he] filed [his] complaint," suggesting that Quintana conceded that his domicile was New Mexico -- or, at least, a state other than Minnesota or Delaware -- whether diversity exists goes to the Court's power to hear the case.  Accordingly, the Court needs more than Quintana's concession, which occurred when the parties were not discussing citizenship.  The Court, therefore, orders that, within ten days of the date that this Memorandum Opinion and Order is entered, Yost shall show cause why the Court should not remand this action to the First Judicial District Court, County of Santa Fe, State of New Mexico, for lack of diverse citizenship.

**IT IS ORDERED** that: (i) the Plaintiff's Motion to Remand, filed September 28, 2017 (Doc. 18), is denied; and (ii) Defendant Andrew C. Yost shall show cause, within ten calendar days of the date of this Memorandum Opinion and Order, why the Court should not remand this action to the First Judicial District Court, County of Santa Fe, State of New Mexico, for lack of diverse citizenship.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Linda J Rios
Michael G. Solon
Rios Law Firm
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Jeffrey E. Jones
Law Office of Jeffrey E. Jones
Santa Fe, New Mexico

    *Attorney for Defendant Andrew C. Yost*

David W. Peterson
Keleher & McLeod, P.A.
Albuquerque, New Mexico

    *Attorney for Defendant American Alternative Insurance Corporation*